**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Jan Eldar Borrud,<br>Petitioner<br>-vs-<br>Charles L. Ryan, et al.,<br>Respondents. | CV-15-8043-PCT-SPL (JFM)<br><br>**Order and**<br>**Report & Recommendation**<br>**on Petition for Writ of Habeas Corpus** |

## I.    MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Florence, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on March 30, 2015 (Doc. 1).  On June 17, 2015 Respondents filed their Response (Doc. 14).   Petitioner filed a Reply on August 19, 2015 (Doc. 35).  Respondents filed supplements to the record on July 6, 2015 (Doc. 21), July 14, 2015 (Doc. 25), and July 31, 2015 (Doc. 31), and a Supplemental Response (Doc. 38) on November 24, 2015. Also pending is Petitioner's Motion for Evidentiary Hearing (Docs. 27, 30, 33).

The Petitioner's Petition and motion are now ripe for consideration.  Accordingly, the undersigned makes the following orders and proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II.    RELEVANT FACTUAL & PROCEDURAL BACKGROUND
### A.    FACTUAL BACKGROUND

In disposing of Petitioner's direct appeal, the Arizona Court of Appeals summarized the evidence at trial as follows:

1

K.B. testified that when her parents separated in December 2002, Defendant moved into a recreational vehicle ("RV") and that she spent Wednesday evenings with him. In approximately January 2004, Defendant offered to give her a massage for a painful back. She said that he then removed her clothing, vigorously massaged her genital area, and began to rub and suck her breasts. Afterward, Defendant told her that she could not tell anyone or he would "lose absolutely everything . . . [and] would go to prison." K.B. said that the same pattern of events occurred on a second Wednesday night and that on a third occasion, Defendant also placed his finger in her vagina…During a final incident in May 2004 when Defendant was living in an apartment, he was naked, laid on top of K.B., and ejaculated. After Defendant left the apartment, K.B. said that she called him, told him to never do it again, and that he never did do it again.

In April 2007, K.B. decided to tell a school counselor about her father's conduct after she saw him holding her sister's baby and "thought that one day he would do to her what he did to me." She confirmed that she had made a telephone call to Defendant that Detective J.R. had recorded.

Detective J.R. testified that he interviewed K.B. the day after she had revealed the allegations. He also overheard and recorded the confrontation call and said that the tape recording accurately reflected the conversation. The court admitted the tape and a transcript of the call.

Wendy Dutton offered expert testimony about "general characteristics of child abuse victims" and said that it is common for a child to delay reporting, particularly if the child was close to the abuser. She stated that some children disclose "bits and pieces over time," may blend incidents together, and may display no symptoms or a wide variety of symptoms.

Defendant testified and admitted that while he was living in an apartment in the summer of 2004, an incident occurred in which K.B. was lying on a lower bunk bed, and as he walked past, she playfully grabbed him with her legs. Defendant said that he lost his balance, fell onto her, and that she grabbed him and he grabbed her back in "kind of a bearhug." K.B. then elevated her pelvis, and he pushed back with his pelvis, "and there would probably have been a couple of undulations." He added that "it was wrong, it was despicable . . , it was not ... supposed to happen." Defendant denied being naked, touching K.B.'s chest or vaginal area with his hand or mouth; he also denied that he ejaculated. He said that after he left, K.B. called him and said, "Let's not do that again," and that he agreed. He said that he told K.B. "we probably ought to keep this to ourselves because I could probably get in trouble for it." Defendant said that he and K. B. never spoke of the incident again until the confrontation call in April 2007.

(Exhibit HHH, Mem. Dec. 6/30/09 at 5-7.)[1]

---

[1] Exhibits to the Answer (Doc. 14) (Exhibits A-JJJJ), Supplement (Doc. 21) (mislabeled Exhibits KKK[K]& LLL[L]), Response re Additional Discovery (Doc. 25) (mislabeled

**B.      PROCEEDINGS AT TRIAL**

On May 2, 2007, a Complaint (Exhibit A) was filed in a Coconino County Justice Court, charging Petitioner with 10 counts related to the events.  On May 10, 2007, the case was presented to the Coconino County Grand Jury by Flagstaff Police Detective Hale.  Grand juror J.P. reported being a family friend of the detective, but denied an impact on his impartiality.  (Exhibit B, R.T. 5/10/07 at 3-4.)  The Grand Jury issued its Indictment (Exhibit C) against Petitioner on four counts of sexual conduct with a minor (1, 3, 5, 7), four counts of child molestation (2, 4, 6, 8), and two counts of sexual abuse of a minor (9, 10).  The pairs of charges of sexual conduct and child molestation related to four separate events (1 and 2, 3 and 4, 5 and 6, 7 and 8).  The two counts of sexual abuse (9 and 10) related to sexual contact with the female breast on two of the same occasions.

**Challenges to Indictment** - Counsel filed a Motion for New Finding of Probable Cause (Exhibit F) arguing that there was no factual support given to the grand jury to support Counts 6, 7, 8 and 10.  Following briefing (Exhibit G), and a hearing (Exhibits I, J), the trial court denied the motion.  (Exhibit K, M.E. 9/14/07.)

Counsel also filed a Motion to Dismiss (Exhibit N) arguing that the Indictment was multiplicitous, purporting to make charges based on four separate incidents, when only three were supported by the evidence.  Following briefing (Exhibits O, P), and a hearing (Exhibits Q), the trial court denied the motion.  (Exhibit T, M.E. 3/20/08.)

**Challenges to Evidence** - Counsel filed a Motion in Limine seeking to suppress "such alleged misconduct as the Defendant's fathering a child out of wedlock, having improperly touched his sister, having engaged in multiple affairs, having improperly touched anyone in the shower, having paraded around the house naked, and/or having had misconduct with any other minor male."  (Exhibit V, Mot. Lim. at 1-2.)

Counsel also filed a Motion to Suppress (Exhibit W) seeking to suppress the

Exhibit MMM[M], parts 1 and 2), and second Response to Motion for Additional Discovery (Doc. 31) (Exhibits NNNN-BBBBB), are referenced herein as "Exhibit ___."

3

confrontation call on the basis that: (1) as an uncounseled interrogation, it was a violation of *Miranda*; (2) it was involuntary under state law; and (3) it was unduly prejudicial because of the vagueness of the conversation and the resulting requirement that Petitioner testify to explain the conversation.

Following briefing (Exhibits AA, BB), and an evidentiary hearing (Exhibit KK, R.T. 5/30/08 at 28, *et seq.*), the trial court denied the motion to suppress and granted the motion in limine.  (Exhibit LL, M.E. 5/30/08 at 3.)

**Trial** – Petitioner proceeded to a jury trial on May 28, 2008.  (*See* Exhibits GG (5/28/08), II (5/29/08), LL (5/30/08), OO (6/2/08), QQ (6/3/08), SS (6/4/08), UU (6/5/08); and R.T. Exhibts FF (5/28/08), BBBBB (5/29/08), KK (5/30/08), NN (6/2/08), PP (6/3/08), RR (6/4/08), TT (6/5/08).)  Petitioner was found guilty on each of the 10 counts of the Indictment.  (Exhibit UU, M.E. 6/5/08.)

**Motion for New Trial** – Petitioner moved (Exhibit VV) for a new trial on the basis of various evidentiary issues, duplicity and variance from the Indictment. Following briefing (Exhibit WW), the trial court denied the motion (Exhibit XX, Order 7/21/08).

**Sentencing** – The prosecution filed a Sentencing Memorandum (Exhibit YY), seeking a sentence of 108-116 years in prison.  Petitioner appeared for sentencing on July 23, 2008. (Exhibit ZZ, R.T. 7/23/08.)

> At sentencing, the court found in mitigation that Defendant had no prior felony convictions, had been employed, and had complied with the terms of his pretrial release. It also found that the aggravating factors offset the mitigating factors. It imposed a presumptive twenty-year term for each count of sexual conduct with a minor, and a seventeen-year presumptive term for each count of child molestation. The court imposed two five-year terms for the sexual abuse counts and ordered that the latter two run concurrently with Count 1 (sexual conduct with a minor) and Count 2 (child molestation); that consecutive to those, the terms for Counts 3 and 4 (misconduct with a child and child molestation) be served concurrently with each other; that consecutive to those, the terms for Counts 5 and 6 (misconduct with a child and child molestation) be served concurrently; and that consecutive to those, Counts 7 and 8 (misconduct with a child and child molestation) be served concurrently. The sentencing minute entry stated that each sentence would begin July 23, 2008 and that Defendant should be credited

with 225 days of presentence incarceration.

(Exhibit HHH, Mem. Dec. at 7-8.)

## C.   PROCEEDINGS ON DIRECT APPEAL

Petitioner filed a direct appeal, and appointed counsel was unable to find an issue for review and filed an Opening Brief (Exhibit CCC) pursuant to *Anders v. California*, 386 U.S. 738 (1967) and related state authorities.  Petitioner then filed his *pro per* Supplemental Brief (Exhibit DDD), asserting as error: (A) the relationship between the grand juror and the witness; (B) various errors at the grand jury; (C) discrepancies in the transcripts of the confrontation call; (D) use of illegally obtained evidence (photos of Petitioner's RV); and (E) failure of trial juror number 6 [P.M.] to disclose prior relationships with Petitioner and other witnesses.

The Arizona Court of Appeals directed supplemental briefing on whether the child molestation charges were lesser included offenses of the sexual conduct charges, and thus a violation of double jeopardy.  (Exhibit ZZZZ, Order 3/27/09.)  Counsel responded, filing a Supplemental Brief (Exhibit EEE) arguing they were, and arguing that Petitioner was entitled to a new trial because of the prejudicial effect of the duplicity.  The State responded (Exhibit FFF) arguing that the convictions for child molestation were duplicitous and should be vacated, but the argument regarding the prejudicial effect was waived by failure to brief it earlier, and was without merit and any error was harmless.  Petitioner replied (Exhibit GGG) that no modification was permissible because the State had waived such a request by failing to file a cross appeal.

On June 30, 2009, the Arizona Court of Appeals issued its Memorandum Decision (Exhibit HHH).  The court found child molestation to be a lesser included offense of sexual conduct, and vacated the convictions and sentences imposed on the child molestation counts (2, 4, 6, 8).  The court found: no impropriety in charging the lesser included offenses; challenges to the grand jury were not cognizable and were waived by failure to timely raise them at trial; the challenge to the transcript of the

5

confrontation call was waived, and the admission of the tape and transcript permissible, and the reference to "addiction" was proper; challenges to the photographs of the RV waived, and that no prejudice was shown; and the challenge to the trial juror waived because the relationship was known to Petitioner, and thus any error was waived by failure to object and no prejudice had been shown. The court "searched the entire record for reversible error and have found one," the double jeopardy issue. The court also corrected a clerical error in the sentence to modify the sentence on Count 7 from 17 years to 20 years, based on the transcript of the oral pronouncement.

Petitioner filed a Motion for Reconsideration (Exhibit III) regarding the modification of the sentence on Count 7. The court granted the motion and amended the Memorandum Decision to eliminate the modification. (Exhibit JJJ, Order 9/10/09.)

Petitioner then sought review by the Arizona Supreme Court (Exhibit KKK[K]), which summarily denied review on April 27, 2010 (Exhibit KKK).

Petitioner did not seek a writ of certiorari from the U.S. Supreme Court. (Petition, Doc 1 at 3.)

## D.   PROCEEDINGS ON POST-CONVICTION RELIE

In June, 2010, Petitioner then filed a Notice of Post-Conviction Relief. The originally appointed counsel (the Coconino County Public Defender) moved to withdraw based on a conflict of interest (Exhibit PPPP), and substitute counsel (the Coconino County Legal Defender) was appointed (Exhibit QQQQ, Order 6/9/10).

In April, 2011, counsel eventually filed a Notice of No Claim Found (Exhibit MMM) and moved for leave for Petitioner to file a *pro per* petition. Petitioner then filed on July 5, 2011 his *pro per* Petition for Post-Conviction Relief (Exhibit NNN), and a Motion for Leave to Exceed (Exhibit OOO) proposing a 176 page memorandum in support of his petition.

Apparently because of some confusion over whether his *pro per* Petition had been received or filed, Petitioner then again filed his pro per petition in November, 2011. On

December 22, 2011, the PCR court mistakenly again appointed the Coconino County Public Defender to represent Petitioner.  (Exhibit PPP.)  The Coconino County Public Defender again filed a Motion to Withdraw (Exhibit RRRR) on the basis of a conflict, which the PCR court granted, again appointing the Coconino County Legal Defender (Exhibit SSSS, Order 1/4/12).  PCR counsel (assigned through the Coconino County Legal Defender office) then filed a Motion for Clarification (Exhibit TTT), noting that counsel had already filed a notice of no claim, and seeking clarification.

In January 2012, the state filed a Motion to Strike (Exhibit QQQ) arguing the proposed petition unnecessarily exceeded the permissible page limits.    The Motion to Strike was granted, and the proposed petition was returned to Petitioner.  (Exhibit WWW, M.E. 2/23/12; Exhibit XXX, M.E. 2/29/12; Exhibit YYY, M.E. 3/8/12.)

Petitioner then filed on March 28, 2012 a second *pro per* Petition for Post-Conviction Relief (Exhibit ZZZ), arguing: (1) ineffective assistance of trial, appellate, and PCR counsel; (2) introduction of inadmissible evidence; (3) grand juror's relationship with testifying officer was structural error; (4) insufficient and defective indictment; (5) prejudicial evidence of an additional, uncharged, allegation of abuse; (6) denial of right of confrontation of the officer testifying at the grand jury; (7) trial error in permitting unqualified expert testimony, instructional error, permitting replaying of testimony during closing arguments, and allowing consideration of intangible evidence; and (8) juror misconduct in failure to disclose familial relationship to Petitioner and the victim.  The State responded (Exhibit AAAA), arguing that claims 5, 6, 7 and 8 were improperly asserted with only arguments incorporated by reference from the rejected prior petition.  The State further responded that all of the claims were previously raised, and disposed of, and thus were precluded from further review, or could have been raised and were not.  The State addressed the claims of ineffective assistance on the merits.  On March 27, 2012, the PCR court summarily denied the "motion."  (Exhibit BBBB.)

Petitioner moved for reconsideration (Exhibit CCCC), which was summarily denied.  (Exhibit DDDD, Order 7/5/12.)

Petitioner then filed a Petition for Review (Exhibit EEEE), arguing that trial court had improperly denied his petition without an evidentiary hearing.  The State responded (Exhibit AAAAA) arguing that claims 2, 3, 5, 6, 7 and 8 were precluded because previously raised, claims 1 and 4 were waived by failure to raise them previously, and the claims of ineffective assistance were without merit.  On October 3, 2013, the Arizona Court of Appeals summarily denied review.  (Exhibit GGG.)

Petitioner filed a Motion for Reconsideration (Exhibit HHHH), which was denied as not permitted.  (Exhibit IIII, Order 10/23/13.)

Petitioner filed a Petition for Review by the Arizona Supreme Court (Exhibit LLL[L], which summarily denied review on March 27, 2014 (Exhibit JJJJ).

Petitioner filed a Petition for Writ of Certiorari with the U.S. Supreme Court, which was denied on October 6, 2014.  (Petition, Doc. 1-1, Exhibits at physical page 33.)

## E.   PETITION FOR SPECIAL ACTION

On June 11, 2010, during the pendency of his PCR proceeding, Petitioner filed a Petition for Special Action with the Arizona Court of Appeals.  Initially, the court set a schedule for briefing.  (Exhibit S-A, Docket at 1.)  However, on June 21, 2010, the Court vacated the briefing schedule and denied review by dismissing the petition.  (Exhibit S-B, Order 6/21/10.)  Petitioner then filed a "Motion for Reconsideration of Special Action and Petition for Supreme Court Review." The Arizona Court of Appeals summarily denied reconsideration, and treated the filing as a petition for review by the Arizona Supreme Court, which it transferred to that court. (Exhibit S-C, Order 7/14/10.)   On December 6, 2010, the Arizona Supreme Court summarily denied review.  (Exhibit S-E, Order 12/6/10.)

## F.   PRESENT FEDERAL HABEAS PROCEEDINGS

**Petition** - Petitioner commenced the current case by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on March 30, 2015 (Doc. 1).  Petitioner's

Petition asserts the following nine grounds for relief:

> **Ground One**: Petitioner's right to be present at critical stages, his right to self-representation, and his right to fundamental fairness were violated when he was excluded from an in-camera conference to determine his Motion for Leave to Exceed Page Limit of Rule 32 Petition;
>
> **Ground Two**: Petitioner's prior counsel provided ineffective assistance;
>
> **Ground Three**: Petitioner's right to privacy, right not to be a witness against himself, right to due process, right to trial by an impartial jury, right to confront witnesses, right to the assistance of counsel, and rights to due process and equal protection were violated when a wiretap recording was improperly used against him;
>
> **Ground Four**: Petitioner's right to due process, right to equal protection, right to trial by an impartial jury, right to be properly informed of the nature and cause of the accusation, and right to effective assistance of counsel were violated because the evidence cannot be reconciled with the statutory language and jury instructions for Counts Nine and Ten;
>
> **Ground Five**: Petitioner's right to due process, right to fundamental fairness, right to equal protection, right to trial by an impartial jury, right to be informed of the nature and cause of the accusation, and right to effective assistance of counsel were violated "by unfair proceedings due to flagrant, pervasive, and/or escalating prosecutorial misconduct," and "defense counsel at all stages failed to raise the misconduct to Petitioner's prejudice";
>
> **Ground Six**: Petitioner's right to a grand jury, right not to be twice put in jeopardy for the same offense, right to due process, right to trial by an impartial jury, right to be informed of the nature and cause of the accusation, right to effective assistance of counsel, and right to equal protection were violated because the indictment was defective;
>
> **Ground Seven**: Petitioner's right not to by twice put in jeopardy for the same offense, right to due process, right to trial by an impartial jury, right to effective assistance, and right to equal protection were violated "by the court's issuance of faulty, misleading jury instructions, and defense counsel at all stages failed to raise the defects";
>
> **Ground Eight**: Petitioner's right to due process, right to trial by an impartial jury, right to effective assistance of counsel, and right to equal protection were violated when one of the jurors "failed to disclose his relationship to several witnesses including Petitioner and the accuser"; [and]
>
> **Ground Nine**: Petitioner's right to a grand jury, right not to twice be put in jeopardy for the same offense, right not to be a witness against himself, right to due process, right to trial by an impartial jury, right to be informed of the nature and cause of the accusation, right to confront witnesses, right to effective assistance of counsel, right to self-representation, right to be present at critical stages, and right to equal protection were violated due to the cumulative effect of the violations described in Counts One through Eight.

(Order 4/6/15, Doc. 7 at 2-3.)

9

**Response** - On June 17, 2015, Respondents filed their Response ("Answer") (Doc. 14).  Respondents argue: (1) Ground One is not cognizable; (2) Petitioner's claims are procedurally defaulted because Petitioner raised no federal claims to the Arizona Court of Appeals; and (3) Petitioner's procedural defaults are not excused based on ineffective assistance of PCR counsel.

Petitioner filed a motion for discovery regarding omitted records. (*See* Docs. 16, 24, 26.)  The Court granted the motion (Doc. 20), and Respondents filed a series of supplements to the record.  (*See* Docs. 21 (Exhibits KKK, LLL), 25 (Exhibit MMM), and 31 (Exhibits NNNN-BBBBB)

**Reply** - On August 19, 2015, Petitioner filed a 120 page Reply (Doc. 35). Petitioner opposes various portions of the factual and procedural background provided by Respondents (*id.* at 1-13), argues Ground One is a cognizable claim (*id.* at 14-29) and that his claims are not procedurally defaulted and are meritorious (*id.* at 29-119).

**Supplement** – On November 13, 2015, the Court granted in part Petitioner's Motion for Additional Discovery (Doc. 24), and directed Respondents to supplement the record with "copies of the orders in Petitioner's Special Action proceedings, and if any claims were addressed on the merits, the copies of the briefs filed therein."  (Order 11/13/15, Doc. 37 at 2-3.)

On November 24, 2015, Respondents filed their Supplemental Response (Doc. 38), providing copies of such orders.

**Motion for Evidentiary Hearing** – On July 23, 2015, Petitioner filed his Motion for Evidentiary Hearing (Doc. 27).  In this 25 page motion, Petitioner seeks an evidentiary hearing on each of his claims.

Respondents have filed a 1 page Objection (Doc. 30), arguing that in light of Petitioner's procedural defaults and the ability of the Court to resolve the claims on the basis of the existing record, no evidentiary hearing is necessary.

Petitioner has replied (Doc. 33), challenging the procedural default, and asserting his diligence.

Because resolution of this motion is intertwined with the resolution of the Petition, the undersigned addresses it herein.

### III.    APPLICATION OF LAW TO FACTS

### A.    EXHAUSTION, PROCEDURAL DEFAULT AND PROCEDURAL BAR

Respondents argue that Petitioner's claims are either procedurally defaulted or were procedurally barred on an independent and adequate state ground, and thus are barred from federal habeas review.

### 1.    Exhaustion Requirement

Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted. *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c).  When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim. *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied*, 455 U.S. 1023 (1982).

Ordinarily, to exhaust his state remedies, the petitioner must have fairly presented his federal claims to the state courts.  "A petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005).

**Proper Forum** - "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

Presentation to PCR or Trial Court not Sufficient – Petitioner argues that various claims were presented to the PCR or trial court.  For example, in his Pro Se PCR Petition

11

(Exhibit ZZZ), Petitioner argued that his federal rights to effective assistance of counsel, under the Sixth Amendment, were violated.  (*Id.* at 2, *et seq.*)   In his Reply, he argues that trial counsel raised various constitutional claims to the trial court.  (Reply, Doc. 35 at 31.)

But presentation at the trial (or PCR) court level is not sufficient.  Rather, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  In Arizona, that generally requires presentation to the Arizona Court of Appeals.  *Castillo*, 399 F.3d at 998.

Arizona Supreme Court Not Proper Place to First Raise Claim - Petitioner argues he properly exhausted his state remedies on various claims by raising them in his Petition for Review to the Arizona Supreme Court on direct appeal.  (*See e.g.* Reply, Doc. 35 at 37 (ineffective assistance of counsel).)

However, the presentation of a claim for the first time in a petitioner's petition for review to the Arizona Supreme Court on direct review is not sufficient to fairly present the claim to the Arizona courts.  The Arizona Supreme Court generally will not consider issues raised for the first time before it, although it has the discretion to do so. *See Town of South Tucson v. Board of Supv'rs of Pima County*, 52 Ariz. 575, 84 P.2d 581 (1938).  Raising "federal constitutional claims for the first and only time to the state's highest court on discretionary review" is not fair presentation.  *Casey v. Moore*, 386 F.3d 896, 918 (9th Cir. 2004).

In *Casey*, the court reiterated that to properly exhaust a claim, "a petitioner must properly raise it on every level of direct review."  *Id.* at 916.

> Academic treatment accords: The leading treatise on federal habeas corpus states, "Generally, a petitioner satisfies the exhaustion requirement if he properly pursues a claim (1) throughout the entire direct appellate process of the state, or (2) throughout one entire judicial postconviction process available in the state."

*Id.* (quoting Liebman & Hertz, *Federal Habeas Corpus Practice and Procedure*, § 23.3b (4th ed. 1998) (emphasis added)).

**Proper Vehicle** -  Ordinarily, "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32." *Roettgen v. Copeland*,  33 F.3d 36, 38 (9th Cir. 1994).   Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court.  This is true even where alternative avenues of reviewing constitutional issues are still available in state court.  *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989).

Petition for Special Action Not Fair Presentation - Here, Petitioner pursued a Petition for Special Action with the Arizona Court of Appeals and the Arizona Supreme Court.  However, "submitting a new claim to the state's highest court in a procedural context in which its merits will not be considered absent special circumstances does not constitute fair presentation."    *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).    The Arizona special action proceeding is just such a discretionary proceeding.

It is true that a petition for special action is the appropriate vehicle to obtain Arizona judicial appellate review of an interlocutory double jeopardy claim.  *See State v. Moody*, 208 Ariz. 424, 437, 94 P.3d 1119, 1133 (Ariz. 2004) (citing *Nalbandian v. Superior Court In and For County of Maricopa*, 163 Ariz. 126, 130, 786 P.2d 977, 981 (Ariz. Ct. App. 1989)).  "The reasons underlying the preference for special action review of denials of motions to dismiss based on double jeopardy are obvious: Because the Double Jeopardy Clause guarantees the right to be free from subsequent prosecution, the clause is violated by the mere commencement of retrial."  *Id.*  Although Petitioner has pursued a variety of double jeopardy claims, Petitioner has not asserted an interlocutory double jeopardy challenge.  Rather, his special action filings were all made after his prosecutions had been completed.

Consequently, because they were not actually addressed by such courts, no claims raised in such special action proceedings can be deemed properly exhausted based on

such presentation.

**Factual Basis** – A petitioner must have fairly presented the operative facts of his federal claim to the state courts as part of the same claim.  A petitioner may not broaden the scope of a constitutional claim in the federal courts by asserting additional operative facts that have not yet been fairly presented to the state courts.  Expanded claims not presented in the highest state court are not considered in a federal habeas petition. *Brown v. Easter*, 68 F.3d 1209 (9th Cir. 1995); *see also, Pappageorge v. Sumner*, 688 F.2d 1294 (9th Cir. 1982), cert. denied, 459 U.S. 1219 (1983).  And, while new factual allegations do not ordinarily render a claim unexhausted, a petitioner may not "fundamentally alter the legal claim already considered by the state courts." *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986). *See also Chacon v. Wood*, 36 F.3d 1459, 1468 (9th Cir.1994).

**Legal Basis** - Failure to alert the state court to the constitutional nature of the claim will amount to failure to exhaust state remedies.  *Duncan v. Henry*, 513 U.S. 364, 366 (1995).   While the petitioner need not recite "book and verse on the federal constitution," *Picard v. Connor,* 404 U.S. 270, 277-78 (1971) (quoting *Daugherty v. Gladden*, 257 F.2d 750, 758 (9th Cir. 1958)), it is not enough that all the facts necessary to support the federal claim were before the state courts or that a "somewhat similar state law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(*per curiam*).  "[T]he petitioner must make the federal basis of the claim explicit either by specifying particular provisions of the federal Constitution or statutes, or by citing to federal case law," *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005), or by "a citation to a state case analyzing [the] federal constitutional issue." *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003).  But a drive-by-citation of a state case applying federal and state law is not sufficient.

> For a federal issue to be presented by the citation of a state decision dealing with both state and federal issues relevant to the claim, the citation must be accompanied by some clear indication that the case involves federal issues. Where, as here, the citation to the state case has no signal in the text of the brief that the petitioner raises federal

14

claims or relies on state law cases that resolve federal issues, the
federal claim is not fairly presented.

*Casey v. Moore*, 386 F.3d 896, 912 n. 13  (9th Cir. 2004).

Pro Se Status Does Not Permit Inference of Federal Claim – Petitioner attempts
to evade his obligation to fairly present his claims under federal law by pointing to the
obligation of courts to liberally construe a *pro se* litigant's pleadings.  (Reply, Doc. 35 at
29-30.)

Indeed, a duty of liberal construction generally exists (although the undersigned
does not resolve whether it extends to state courts and thus affects findings of fair
presentation).  "We must construe pro se habeas filings liberally, and may treat the
allegations of a verified complaint or petition as an affidavit."  *Laws v. Lamarque*, 351
F.3d 919, 924 (9th Cir. 2003).  "However, a liberal interpretation of a civil rights complaint
may not supply essential elements of the claim that were not initially pled."  *Ivey v. Bd. of
Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  "Although we liberally construe
the briefs of pro se appellants, we also require that arguments must be briefed to be preserved."
*Price v. Digital Equip. Corp.*, 846 F.2d 1026, 1028 (5th Cir.1988) (citations omitted).
"Although we must liberally construe plaintiff's factual allegations, we will not supply
additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not
been pleaded."  *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) (citations omitted).  Here,
Petitioner does not merely insist on a liberal construction of arguments raised, but invites this
Court to supply claims wholesale which Petitioner did not raise, based solely on his assertion of
the underlying facts.   Doing so would render meaningless the instruction that "[i]t is not
enough that all the facts necessary to support the federal claim were before the state
courts or that a somewhat similar state law claim was made."  *Anderson v. Harless*, 459
U.S. 4, 6 (1982) (*per curiam*).

General References to Constitutional Violations on Direct Appeal Not Fair
Presentation - Petitioner makes assertions that on direct appeal he alerted the Arizona
Court of Appeals to the federal nature of his claims by asserting that his " 'constitutional
rights were denied'."  (Reply, Doc. 35 at 31.)   Indeed, in the introduction to his Pro Se

Supplemental Brief, Petitioner argued:  "Although any one of the errors that I bring attention to individually violated my constitutional rights, the aggregate effectively voided all objective impartiality with which the jurors may have considered the case." (Exhibit DDD at 2.)   In arguing a number of his allegations of error, Petitioner made conclusory allegations that the complained of events resulted in: "denying me my constitutional rights" (*id.* at 6); "violated my constitutional rights" (*id.* at 8, 15); "my constitutional rights were violated" (*id.* at 10); and "my constitutional rights were denied" (*id.* at 14, 16).

However, Petitioner did not "specify[] particular provisions of the federal Constitution or statutes, or …cit[e] federal case law." *Insyxiengmay*, 403 F.3d at 668. The Ninth Circuit has held that "Mere 'general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial,' do not establish exhaustion." *Castillo*, 399 F.3d at 999 (quoting *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir.1999)).   "[I]t is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court."  *Gray v. Netherland*, 518 U.S. 152, 163 (1996).   Moreover, Petitioner did not even reference such broad principles, but made bare references to constitutional rights. Petitioner did not even indicate that he was referencing his rights under the federal constitution, as opposed to the state constitution.  "Even where a petitioner argues that an error deprived him of a 'fair trial' or the 'right to present a defense,' unless the petitioner clearly alerts the court that he is alleging a specific federal constitutional violation, the petitioner has not fairly presented the claim."  *Casey v. Moore*, 386 F.3d 896, 913 (9th Cir. 2004).   Similarly, a general appeal to "constitutional violations" is not fair presentation.

Petitioner protests that the federal nature of his claims must have been sufficiently asserted because the Arizona Court of Appeals was able to discern a federal double jeopardy claim, which it proceeded to decide.  (Petition, Doc. 35 at 39.)  However, Petitioner's Supplemental Pro Se Brief (Exhibit DDD) did not reference any violation of

double jeopardy, or other similar charging error.  Rather, it appears that the appellate court's addressing of this claim arose *sua sponte* while fulfilling its obligation under *Anders v. California*, 386 U.S. 738 (1967) to search the record for error.  (*See* Exhibit HHH, Memorandum Decision at 2 (noting obligation under *Anders* and order for supplemental briefing on double jeopardy issue).)

Finally, Petitioner argues that the Arizona Court of Appeals must have understood that he was asserting federal claims because the court relied on federal law in disposing of his double jeopardy claims. (Reply, Doc. 35 at 39.)  But assertion of federal law with respect to one claim does not result in the application of federal law to all claims raised. Rather, exhaustion of each claim is required. *Rose v. Lundy*, 455 U.S. 509, 519 (1982).

Accordingly, none of Petitioner's references in his appellate brief to violation of constitutional rights was sufficient to fairly present a federal claim.

Ineffective Assistance Claim Not Fairly Presented by Arguing Underlying Claim - Petitioner argues that his claims of ineffective assistance relate to the issues raised in Grounds Three through Nine, which he fairly presented to the state courts.  (Reply, Doc. 35 at 31.) Assuming Grounds Three through Nine had been fairly presented to the Arizona Court of Appeals, that would not result in a fair presentation of Petitioner's related claims of ineffective assistance.  "While [the ineffective assistance and underlying constitutional claim are] admittedly related, they are distinct claims with separate elements of proof, and each claim should have been separately and specifically presented to the state courts.*"  Rose v. Palmateer*, 395 F.3d 1108, 1112 (9th Cir. 2005).

Cumulative Error Claim Not Fairly Presented by Raising Component Errors – In Ground Nine, Petitioner asserts a claim of cumulative error resulting in a denial of due process.  To the extent that Petitioner may have fairly presented or otherwise exhausted one or more of the underlying component errors (e.g. the double jeopardy violation), that is not sufficient to fairly exhaust a claim of cumulative error.

"The cumulative error doctrine allows a petitioner to present a standalone claim asserting the cumulative effect of errors at trial that so undermined the verdict as to

17

constitute a denial of his constitutional right to due process." *Collins v. Sec'y of Pennsylvania Dept. of Corr.*, 742 F.3d 528, 542 (3rd Cir. 2014).   Cumulative error applies where, "although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors [has] still prejudice[d] a defendant." *Whelchel v. Washington*, 232 F.3d 1197, 1212 (9th Cir. 2000) (quoting *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir.1996).

> The Supreme Court has clearly established that the combined effect of multiple trial court errors violates due process where it renders the resulting criminal trial fundamentally unfair. The cumulative effect of multiple errors can violate due process even where no single error rises to the level of a constitutional violation or would independently warrant reversal.

*Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007) (citations omitted)(citing *Chambers v. Mississippi*, 410 U.S. 284, 298, 302–03 (1973)).   That principle is applicable on habeas review.  *See Whelchel v. Washington,* 232 F.3d 1197, 1212 (9th Cir. 2000).  *See also* Van Cleave, *When Is An Error Not an "Error"? Habeas Corpus and Cumulative Error*, 46 Baylor L.Rev. 59, 60 (1993).[2]

But, this distinct claim must be exhausted.  "Briefing a number of isolated errors that turn out to be insufficient to warrant reversal does not automatically require the court to consider whether the cumulative effect of the alleged errors prejudiced the petitioner."  *Wooten v. Kirkland*, 540 F.3d 1019, 1025 (9th Cir. 2008).  Accordingly,

---

[2]   A standalone claim of cumulative error is at least logically distinguishable from those circumstances where courts are called upon to cumulate the effect of a series of constitutional violations to ascertain whether there was harmless error.  *See e.g. Turner v. Duncan*, 158 F.3d 449, 457 (9th Cir. 1998), *as amended on denial of reh'g* (Nov. 24, 1998) ("When an attorney has made a series of errors that prevents the proper presentation of a defense, it is appropriate to consider the cumulative impact of the errors in assessing prejudice."); *Harris By & Through Ramseyer v. Wood*, 64 F.3d 1432, 1439 (9th Cir. 1995) (finding cumulative prejudice from multiple deficiencies of counsel, and thus declining to address prejudice from individual deficiencies); *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006) (same).  *See also* John H. Blume, Christopher Seeds, *Reliability Matters: Reassociating Bagley Materiality, Strickland Prejudice, and Cumulative Harmless Error*, 95 J. Crim. L. & Criminology 1153, 1184-85 (2005) (discussing cumulating separately the errors from ineffective assistance and prosecutorial misconduct, and cumulating errors for purposes of a harmless error analysis and proposing a global analysis of prejudice).  It is not clear, however, that the courts manage to clearly distinguish between the two (cumulative error v. cumulative prejudice) in their analysis.

such claims must be separately fairly presented.  *Id.*   *See also Jimenez v. Walker*, 458 F.3d 130, 149 (9th Cir. 2006);  *Solis v. Garcia*, 219 F.3d 922, 930 (9th Cir.2000).  *Cf.* Brian J. Levy*, Requiring Exhaustion for Cumulative Error Review of Harmlessness Does Not Add Up,* 2014 Wis. L. Rev. Online 20, 20-21 (2014) (differentiating between standalone cumulative error claims, and cumulative error in the nature of cumulative prejudice, and arguing that exhaustion of the latter as a separate claim should not be required).  *See also Collins v. Secretary of Pennsylvania Dept. of Corrections*, 742 F.3d 528, 542–43 (3d Cir. 2014); *Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006) (holding that cumulative error claim must be fairly presented to state court to later be considered by federal courts on habeas review*); Keith v. Mitchell*, 455 F.3d 662, 679 (6th Cir. 2006) ("Because [the petitioner] did not raise his claim of cumulative error in the state courts, it is procedurally defaulted."); *Gonzales v. McKune*, 279 F.3d 922, 925 (10th Cir. 2002) (finding default on habeas review because state court was not asked to consider cumulative error and therefore never had the opportunity to consider it).[3]

**Fair Presentation** - "[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). The Arizona habeas petitioner "must have presented his federal, constitutional issue before the Arizona Court of Appeals within the four corners of his appellate briefing."

---

[3] The Third Circuit concluded in *Collins*, and the Federal Habeas Manual reports that the Fifth Circuit has held that "cumulative error relief is available so long as the individual errors were themselves not procedurally defaulted."   Federal Habeas Manual § 9C:46 (citing *Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992) (*en banc*)).   *See also Collins,* 742 F.3d at 542.   The undersigned does not discern *Derden* to reject a requirement of exhaustion of the cumulative error claim itself.  The opinion is devoid of analysis, and simply concludes that cumulative error claims can be brought when certain conditions are met, including "the errors were not procedurally defaulted for habeas purposes." This was based upon the contention that because a "trial transcript is lifeless [and] may be misleading," exhaustion of the component claims serves to "demonstrate that they were believed at the time of trial to have had an adverse effect on the defense." *Derden*, 978 F.2d at 1458.   At most, *Derden* seems to suggest that (regardless whether the cumulative error claim itself be exhausted) the component claims must be individually exhausted.

*Castillo v. McFadden*, 399 F.3d 993, 1000 (9th Cir. 2005).  *But see Insyxiengmay v. Morgan*, 403 F.3d 657, 668-669 (9th Cir. 2005) (arguments set out in appendix attached to petition and incorporated by reference were fairly presented).

<u>Challenge Based Solely on State Law Not Fair Presentation</u> -  Petitioner asserts various claims were properly exhausted because they were fairly presented in his petition for review to the Arizona Court of Appeals in his PCR proceeding.   However, Petitioner's Petition for Review argued no federal claims.   Instead, that petition was limited to arguing that the PCR court had violated state law by denying him an evidentiary hearing, and failing to perceive his colorable claims.   Nor did Petitioner append to his Petition for Review, or incorporate by reference, records containing his arguments below.

In *Baldwin v. Reese*, the Supreme Court held "that ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  541 U.S. 27, 32 (2004).  Relying on *Baldwin*, the Ninth Circuit has held that to have fairly presented  a claim, a habeas petitioner "must have presented his federal, constitutional issue before the Arizona Court of Appeals within the four corners of his appellate briefing,"  and "the Arizona Court of Appeals was not required to review the parties' trial court pleadings to see if it could discover for itself a federal, constitutional issue."  *Castillo*, 399 F.3d at 1000.   Here, Petitioner's generalized objections to the rejection of his petition by the PCR court would have alerted the Arizona Court of Appeals to federal claims raised before the PCR court only if the court were required to reviews the lower court pleadings.   *Baldwin* and *Castillo* counsel that this is not fair presentation.

Similarly, Petitioner protests that the fair presentation of his federal claims is evidenced by the fact that in responding to his conclusory PCR Petition for Review, the prosecution proceeded to discuss his federal claims.   For example, the State addressed Petitioner's claims of ineffective assistance by observing "Arizona has adopted the

*Strickland* two-prong test for ineffective assistance of counsel," and citing *Strickland v. Washington*, 466 U.S. 668 (1984), the leading federal case on ineffective assistance. (Exhibit AAAAA at 11.)

However, a response by the state is not indicative of fair presentation.  Unlike the responding state, the reviewing court does not come armed with knowledge of the proceedings below, and the federal courts have repeatedly rejected arguments that the state courts should be required to read beyond the petitioner's briefs to discern the nature of his claims.  *Castillo*, 399 F.3d at 1000.

<u>Appending Briefs with Arguments to *Anders* Brief Not Fair Presentation</u> -  Petitioner argues that various claims, *e.g.* his challenge to the wiretap, were raised in his Motion for New Trial, and that the motion was appended to counsel's *Anders* brief. (Reply, Doc. 35 at 57.) Indeed, that Motion did raise a Fifth Amendment challenge to the wiretap of the confrontation call.  (*See* Exhibit CCC, *Anders* Brief at Exhibit B, Motion for New Trial at 4-5.)

It is true that arguments set out in an appendix attached to petition and incorporated by reference were fairly presented.  *See Insyxiengmay v. Morgan*, 403 F.3d 657, 668-669 (9th Cir. 2005).  But here, appellate counsel did not incorporate those arguments by reference.  Instead, appellate counsel simply referenced the filing of the motion, and that it was attached.  (Exhibit CCC at 1.)  Indeed, the very essence of an *Anders* brief is to deny the assertion of any claim. *Anders*, 386 U.S. at 744 ("if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court").  Thus, the simple attachment of the Motion for New Trial to the *Anders* brief did not amount to fair presentation of any claims.

<u>Presentation in Reply Brief Not Fair Presentation</u> – Petitioner argues that he raised various claims in his Reply Brief (Exhibit FFFF) on review of his PCR petition. However, claims raised for the first time in a reply brief to the Arizona Court of Appeals are not fairly presented.  *See* Ariz. R. Crim. Proc. 32.9(c)(1) ("Failure to raise any issue that could be raised in the petition or the cross-petition for review shall constitute waiver of appellate review of that issue."); Ariz. R. Crim. P. 32.9(c)(2) ("The reply [in support

21

of a petition for review] shall be limited to matters addressed in the response . . . ."); and *State v. Shabie*, 2013 WL 1284310, at *2 (Ariz. App. Mar. 29, 2013) ("we do not address claims not raised in the petition for review, to which the state had no opportunity to respond").  *See also State v.Royalty*, 236 Ariz. 125, 129, 336 P.3d 758, 762, ¶ 15 n.9 (Ariz. App. 2014) (declining to address claim raised for the first time in reply in support of PCR petition, collecting authorities for the proposition that claims raised for the first time in a reply brief are waived); *State v. Lopez*, 223 Ariz. 238, 240, 221 P.3d 1052, 1054, ¶¶ 6–7 (Ariz. App. 2009) (applying rule that new claims may not be raised in a reply to Rule 32 proceedings); *State v. Aleman*, 210 Ariz. 232, 236, 109 P.3d 571, 575, ¶ 9 (Ariz. App. 2005) (declining to consider claim first raised in reply on direct appeal).

    <u>Presentation in Motion to Supplement Not Fair Presentation</u> - Petitioner replies that he "presented the operative facts and the legal theories (both Federal and state) to the Arizona Court of Appeals and the Arizona Supreme Court in a 'Motion for Leave to Supplement the Petition for Review of the Rule 32 Petition for Post-Conviction Relief for Cause' on December 21, 2012."  (Reply, Doc. 35 at 26.)  Petitioner acknowledges that his motion to supplement was denied, and argues that this denied him an opportunity to present the claim.  (*Id.* at 26-28.)

    Presentation of a claim in a motion to supplement is not fair presentation.  *See Greene v. Lambert*, 288 F.3d 1081, 1087 (9th Cir. 2002) (raising for first time in discretionary motion for reconsideration not fair presentment unless actually considered); and Ariz. R. Crim. P. 32.9(c) ("Failure to raise any issue that could be raised in the petition or the cross-petition for review shall constitute waiver of appellate review of that issue.").

    **Actual Consideration** - A state court's actual consideration of a claim satisfies the exhaustion requirement, regardless whether the claims was fairly presented. *See Sandstrom v. Butterworth*, 738 F.2d 1200, 1206 (11th Cir.1984) ("[t]here is no better evidence of exhaustion than a state court's actual consideration of the relevant

constitutional issue"); *see also Walton v. Caspari*, 916 F.2d 1352, 1356-57 (8th Cir.1990) (state court's *sua sponte* consideration of an issue satisfies exhaustion).

**Conclusion regarding Proper Exhaustion** – Based upon the foregoing, the undersigned concludes that Petitioner failed to fairly present any federal claims to the Arizona Court of Appeals in his PCR or special action proceedings, and no claims were actually considered by the Courts in those proceedings.

Thus, any claims properly exhausted must have been fairly presented or actually considered in Petitioner's direct appeal, his only other foray to the Arizona Court of Appeals.  To have fairly presented claims in that proceeding, Petitioner must have raised them in his *Pro Per* Supplemental Brief (Exhibit DDD), or counsel's Supplemental Brief (Exhibit EEE).

As discussed hereinabove, Petitioner made only general references to unspecified constitutional violations in his *Pro Per* Supplemental Brief, which was insufficient to fairly present a federal claim.

The only federal claim argued by Petitioner and actually addressed by the Arizona Court of Appeals on direct appeal was the double jeopardy claim based on the conviction on the greater and the lesser included offenses of sexual conduct with a minor and child molestation.   (*See* Appellant's Supplemental Brief, Exhibit EEE ("Double Jeopardy clauses of the United States and Arizona Constitutions").)

Petitioner makes references to violations his double jeopardy rights in Grounds Six (Defective Indictment) and Nine (Cumulative Error).[4]

With regard to Ground Nine, Petitioner did not fairly present a claim of cumulative error on direct appeal, and, as discussed hereinabove, the mere presentation of the component claim of double jeopardy did not fairly present the claim of cumulative

---

[4]  In his Reply, Petitioner attempts to leverage the consideration of this issue into exhaustion of all of his related claims, including those of a deficient indictment, prosecutorial misconduct, instructional error, and ineffective assistance of counsel. (Reply, Doc. 35 at 41.)  However, these are distinct claims, which were required to be separately exhausted.  *See e.g. Rose v. Palmateer*, 395 F.3d 1108, 1112 (9th Cir. 2005).

error.

With regard to former, Petitioner argues *inter alia* in Ground Six that his double jeopardy and due process rights were violated because of the prejudicial effect of submitting the duplicative charges to the jury. He argues this created "a prejudicial impression of much greater wrongdoing than actually alleged by the accuser, where (1) both the grand and petit jurors understood the ten charged counts to be 'separate and distinct' offenses, yet counts 2, 4, 6 and 8 were in fact lesser included offenses." (Petition, Doc. 1 at 11.)

Similarly, Petitioner argued on direct appeal that he might "be entitled to a new trial because of the prejudicial effect of submitting multiple charges to the jury." (Exhibit FFF, Supplemental Brief at 1.) Moreover, the Arizona Court of Appeals directly addressed the claim on the basis of federal law:

> Although Defendant's appellate counsel asks us to consider consider [sic] whether Defendant should receive a new trial because of possible prejudice, he cites no authority for support. The United States Supreme Court held in *Ohio v. Johnson*, 467 U.S. 493, 500 (1984), that "the State is not prohibited by the Double Jeopardy Clause from charging respondent with greater and lesser included offenses and prosecuting those offenses in a single trial." The Arizona Supreme Court reached a similar conclusion in *State v. Jorgenson*, 108 Ariz. 476, 478, 502 P.2d 158, 160 (1972), when it found that submitting both robbery and aggravated assault counts, when based on the same actions, to the jury was not so prejudicial that it constituted reversible error.

(Exhibit HHH, Mem. Dec. at 11-12.)

Thus, the only claim raised in Petitioner's Petition on which he properly exhausted his state remedies is his Double Jeopardy claim in Ground Six asserting prejudice with regard to the greater offenses resulting from indictment on the prohibited lesser included offenses.

## 2.   **Procedural Default**

Ordinarily, unexhausted claims are dismissed without prejudice. *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991). However, where a petitioner has failed to

properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief.  Dismissal with prejudice of a procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Respondents argue that Petitioner may no longer present his unexhausted claims to the state courts.  Respondents rely upon Arizona's preclusion bar, set out in Ariz. R. Crim. Proc. 32.2(a) and time limit bar, set out in Ariz. R. Crim. P.  32.4.  (Answer, Doc. 14 at 16.)

**Remedies by Direct Appeal** - Under Ariz.R.Crim.P. 31.3, the time for filing a direct appeal expires twenty days after entry of the judgment and sentence. Moreover, no provision is made for a successive direct appeal.  Accordingly, direct appeal is no longer available for review of Petitioner's unexhausted claims.

**Remedies by Post-Conviction Relief** – Under Arizona's preclusion, waiver and timeliness bars, Petitioner can no longer seek review by a subsequent PCR Petition.

Preclusion Bar – Under the rules applicable to Arizona's post-conviction process, a claim may not be brought in a petition for post-conviction relief if the claim was "[f]inally adjudicated on the merits on appeal or in any previous collateral proceeding." Ariz. R. Crim. P. 32.2(a)(2).

Waiver Bar - Under the rules applicable to Arizona's post-conviction process, a claim may not ordinarily be brought in a petition for post-conviction relief that "has been waived at trial, on appeal, or in any previous collateral proceeding."   Ariz.R.Crim.P. 32.2(a)(3).   Under this rule, some claims may be deemed waived if the State simply shows "that the defendant did not raise the error at trial, on appeal, or in a previous collateral proceeding." *Stewart v. Smith*, 202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002) (quoting Ariz.R.Crim.P. 32.2, Comments). *But see State v. Diaz*, 236 Ariz. 361, 340 P.3d 1069 (2014) (failure of PCR counsel, without fault by petitioner, to file timely petition in prior PCR proceedings did not amount to waiver of claims of ineffective assistance of

1  trial counsel).

2        For others of "sufficient constitutional magnitude," the State "must show that the

3  defendant personally, "knowingly, voluntarily and intelligently' [did] not raise' the

4  ground or denial of a right."  Id.  That requirement is limited to those constitutional

5  rights "that can only be waived by a defendant personally." *State v. Swoopes*, 216 Ariz.

6  390, 399, 166 P.3d 945, 954 (App.Div. 2, 2007).  Indeed, in coming to its prescription in

7  *Stewart v. Smith*, the Arizona Supreme Court identified: (1) waiver of the right to

8  counsel, (2) waiver of the right to a jury trial, and (3) waiver of the right to a twelve-

9  person jury under the Arizona Constitution, as among those rights which require a

10 personal waiver.  202 Ariz. at 450, 46 P.3d at 1071.   Claims based upon ineffective

11 assistance of counsel are determined by looking at "the nature of the right allegedly

12 affected by counsel's ineffective performance. *Id*.

13       Here, none of Petitioner's claims are of the sort requiring a personal waiver, and

14 Petitioner's claims of ineffective assistance similarly have at their core the kinds of

15 claims not within the types identified as requiring a personal waiver.

16       <u>Timeliness Bar</u> - Even if not barred by preclusion, Petitioner would now be barred

17 from raising his claims by Arizona's time bars.  Ariz.R.Crim.P. 32.4 requires that

18 petitions for post-conviction relief (other than those which are "of-right") be filed

19 "within ninety days after the entry of judgment and sentence or within thirty days after

20 the issuance of the order and mandate in the direct appeal, whichever is the later."  *See*

21 *State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive

22 petition, and noting that first petition of pleading defendant deemed direct appeal for

23 purposes of the rule).   That time has long since passed.

24       <u>Exceptions</u> - Rules 32.2 and  32.4(a) do not bar dilatory claims if they fall within

25 the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h). See Ariz. R.

26 Crim. P.  32.2(b) (exceptions to preclusion bar); Ariz. R. Crim. P.  32.4(a) (exceptions to

27 timeliness bar).  Petitioner has not asserted that any of these exceptions are applicable to

28 his claims.   Nor does it appears that such exceptions would apply.  The rule defines the

excepted claims as follows:

> d. The person is being held in custody after the sentence imposed has expired;
> e. Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:
> (1) The newly discovered material facts were discovered after the trial.
> (2) The defendant exercised due diligence in securing the newly discovered material facts.
> (3) The newly discovered material facts are not merely cumulative or used solely for impeachment, unless the impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence.
> f. The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or
> g. There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or
> h. The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

Ariz.R.Crim.P. 32.1.

Paragraph 32.1 (d) (expired sentence) generally has no application to an Arizona prisoner who is simply attacking the validity of his conviction or sentence.  Where a claim is based on "newly discovered evidence" that has previously been presented to the state courts, the evidence is no longer "newly discovered" and paragraph (e) has no application.  Here, Petitioner has long ago asserted the facts underlying his claims.  Paragraph (f) has no application where the petitioner filed a timely notice of post-conviction relief.  Paragraph (g) has no application because Petitioner has not asserted a change in the law since his last PCR proceeding.  Finally, paragraph (h), concerning claims of actual innocence, has no application to the procedural claims Petitioner asserts in this proceeding.

Therefore, none of the exceptions apply, and Arizona's time and waiver bars would prevent Petitioner from returning to state court.  Thus, Petitioner's claims that were not fairly presented are all now procedurally defaulted.

27

### 3.   Cause and Prejudice

If the habeas petitioner has procedurally defaulted on a claim, or it has been procedurally barred on independent and adequate state grounds, he may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

"Cause" is the legitimate excuse for the default.  *Thomas v. Lewis*, 945 F.2d 1119, 1123 (1991). "Because of the wide variety of contexts in which a procedural default can occur, the Supreme Court 'has not given the term "cause" precise content.'" *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990) (quoting Reed, 468 U.S. at 13), *cert. denied*, 498 U.S. 832 (1990).  The Supreme Court has suggested, however, that cause should ordinarily turn on some objective factor external to petitioner, for instance:

> ... a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that "some interference by officials", made compliance impracticable, would constitute cause under this standard.

*Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations omitted).

Liberally construing his filings, Petitioner argues that this Court should find cause to excuse his procedural defaults based on[5]: (1) his diligence despite his *pro se*, untrained status (Reply, Doc. 35 at 29-30); (2) the rejection of his original, oversized, PCR petition, particularly because this was purportedly done at a hearing at which Petitioner was not present (Reply, Doc. 35 at 6-12); and (3) the failure of his trial, appellate and PCR counsel to raise his various claims.

**Pro Se Status** – Petitioner's references to his untrained, *pro se* status, even accompanied with his assertions of diligence, do not establish cause to excuse his procedural defaults.  The "cause and prejudice" standard is equally applicable to pro se litigants. *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990); *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 908 (9th Cir. 1986).  Thus, Petitioner's *pro se*

---

[5] In his Petition, Petitioner contends that all of his claims were presented to the Arizona Court of Appeals, and thus proffers no explanation for any failure to do so.  (Doc. 1 at 6, *et seq.*)

status at various points does not constitute cause to excuse his procedural defaults.

**<u>Rejection of Oversized Petition</u>** – Petitioner complains that many of his claims were asserted in his original PCR petition, which was rejected by the PCR court as oversized.

At the outset, the undersigned observes that "*[p]ro se* litigants must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) *overruled on other grounds by Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012). "Although we construe pleadings liberally in their favor, *pro se* litigants are bound by the rules of procedure." *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995).

Petitioner does not contend that his original PCR petition was not oversized. Arizona Rule of Criminal Procedure 32.5 limits PCR petitions to 25 pages, and directs that non-complying petitions simply be returned unfiled. Petitioner's Motion for Leave to Exceed Page Count Limit (Exhibit OOO) acknowledged the rule. Petitioner's proposed petition attached to that Motion was some 176 pages in length, exclusive of exhibits and affidavits, and thus exceeded the applicable limit by some 600%.

Petitioner complains that he was not allowed to be present at a hearing addressing the size of his Petition. However, Petitioner fails to suggest what argument he could have raised which would have convinced a PCR court to permit such an expansive filing. His Motion referenced his obligation to raise all his claims, his penmanship and his efforts to be succinct. Moreover, following denial of his Motion, Petitioner did not again seek to exceed the page limits with a more limited petition, but instead submitted a conforming petition. Indeed, the instant habeas Petition is only some 43 pages in length.

Perhaps most importantly, Petitioner does not explain how the page limitations imposed resulted in his failure to properly exhaust his state remedies on his claims. Most of Petitioner's claims were effectively procedurally defaulted by his failure to raise them on direct appeal. (*See* Exhibit AAAAA, State's Response, at 10 (arguing all but claims of ineffective assistance precluded).) Thus, he fails to show that additional space in his PCR petition would not have resulted in fair presentation of the claims.

29

1   Moreover, as discussed herein above, Petitioner's claims of ineffective assistance were
2   presented in his PCR petition (Exhibit ZZZ), and thus were not procedurally defaulted by reason
3   of Petitioner's failure to raise them to the PCR court, but because of his failure to fairly present
4   them to the Arizona Court of Appeals.  The page limitation did not affect that filing.

5   In sum, Petitioner fails to show that the imposition of the page limitation resulted
6   in Petitioner's failure to properly exhaust his state remedies.

7   **Ineffective Assistance of Counsel** – Petitioner argues that his claims are
8   procedurally defaulted because of the ineffective assistance of his trial, appellate and
9   PCR counsel.

10   Trial and Appellate Counsel - Ineffective assistance of trial and appellate counsel
11   may constitute cause for failing to properly exhaust claims in state courts and excuse
12   procedural default.  *Ortiz v. Stewart*, 149 F.3d 923, 932, (9th Cir. 1998).  However, "[t]o
13   constitute cause for procedural default of a federal habeas claim, the constitutional claim
14   of ineffective assistance of counsel must first have been presented to the state courts as
15   an independent claim." *Cockett v. Ray*, 333 F.3d 938, 943 (9th Cir. 2003).     Here,
16   Petitioner has failed to properly exhaust his claims of ineffective assistance of trial and
17   appellate counsel by failing to fairly present them to the Arizona Court of Appeals.

18   PCR Counsel - Petitioner also asserts that PCR counsel was ineffective for failing
19   to raise his various claims. Respondents address the issue in depth, by attempting to
20   show that the assertion is unsupported.  (Answer, Doc. 14 at 20, *et seq.*)

21   Ordinarily, to meet the "cause" requirement, the ineffective assistance of counsel
22   must amount to an independent constitutional violation. *Ortiz v. Stewart*, 149 F.3d 923,
23   932, (9th Cir. 1998).  Accordingly, where no constitutional right to an attorney exists
24   (e.g. in a PCR proceeding), ineffective assistance will not amount to cause excusing the
25   state procedural default.  *Id.*  In *Patrick Poland v. Stewart*, 169 F. 3d 573 (9th Cir. 1999),
26   the Ninth Circuit held that "[b]ecause there is no right to an attorney in state post-
27   conviction proceedings, there cannot be constitutionally ineffective assistance of counsel
28   in such proceedings." *Id*. at 588 (quoting *Coleman v. Thompson*, 501 U.S. 722,  752

30

(1991)).

However, the Supreme Court has recently recognized two exceptions to this limitation, in *Maples* and *Martinez*.

In *Maples v. Thomas*, 132 S.Ct. 912 (2012), the Supreme Court held that cause could be shown when post-conviction counsel was not merely negligent (and under the law of agency, that negligence being chargeable to the petitioner) but had abandoned the representation without notice to the petitioner, resulting in the loss of his state remedies.

Here, however, Petitioner does not suggest that PCR counsel abandoned the representation without notice, merely that counsel was deficient in not bringing claims Petitioner asserts are meritorious.  Indeed, counsel filed the appropriate notice to the Court when he was unable to find an issue of review. Thus, any such deficiency was not external to the defense, and is chargeable to Petitioner.

In *Martinez v. Ryan,* 132 S.Ct. 1309 (2012), the Court recognized that because courts increasingly reserve review of claims of ineffective assistance of trial counsel to post-conviction relief proceedings, the ineffectiveness of counsel in such PCR proceedings could effectively defeat any review of trial counsel's ineffectiveness. Accordingly, the Court recognized a narrow exception to the Court's ruling in *Coleman, supra,* that the ineffectiveness of PCR counsel cannot provide cause.  Arizona, the state at issue in *Martinez*, is just such a state, and accordingly ineffective assistance of PCR counsel can establish cause to excuse a procedural default of a claim of ineffective assistance of trial counsel.  In *Ha Van Nguyen*, 736 F.3d 1287 (9th Cir. 2013), the Ninth Circuit extended *Martinez* to PCR counsel's ineffectiveness in failing to bring claims of ineffective assistance of appellate counsel. [6]

However, *Martinez* only applies to the important "right to the effective assistance

---

[6] The Ninth Circuit has concluded that an ineffective assistance of PCR counsel claim used to establish cause for a procedural default of a claim for ineffective assistance of trial counsel need not be exhausted itself.  *Dickens v. Ryan, Dickens v. Ryan*, 740 F.3d 1302, 1322 n. 17 (9th Cir. 2014) ("where *Martinez* applies, there seems to be no requirement that the claim of ineffective assistance of PCR counsel as cause for an ineffective-assistance-of-sentencing-counsel claim be presented to the state courts").

of trial counsel." 132 S.Ct. at 1320. Accordingly, Petitioner's complaint that PCR counsel was ineffective for failing to raise other substantive claims (other than the ineffectiveness of trial or appellate counsel) is not subject to the *Martinez* exception, and any such ineffectiveness would not excuse Petitioner's procedural default of those claims.

Most importantly, however, the *Martinez* court made clear that the limited exception it was creating for ineffectiveness of PCR counsel as "cause" did not extend outside the initial PCR proceeding.

> The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts. It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons.

*Martinez*, 132 S.Ct. at 1320.

Here, Petitioner's claims of ineffective assistance of trial and appellate counsel were not procedurally defaulted in Petitioner's initial PCR proceeding, but in the petition for review from that proceeding, when Petitioner failed to again raise his claims of ineffectiveness. Thus, *Martinez* has no application in that proceeding.

In particular, in his habeas Petition Petitioner asserts claims of ineffective assistance of trial and appellate counsel generally founded upon the failure to raise the claims in Grounds Two through Nine. (Petition, Doc. 1 at 7, ii-xi.) In particular, Petitioner asserts claims based on trial counsel's (Mr. Griffen) failure to pursue:

1. the authorization for the recording ("wiretap") of the confrontation call;

2. the authenticity and fidelity of the recording of the confrontation call;

3. the relationship between a grand juror and a witness;

4. the indictment was based on double jeopardy violations;

5. the lack of evidence to support the sexual abuse charges in Counts 9 and 10;

6. a juror's bias resulting from relationship with various witnesses;

7. the instructions on the sexual abuse charges;

8. prosecutorial misconduct;

9. restrictions on juror questioning of witnesses;

10. the ambiguity between Counts 9 and 10;

11. evidence considered by the jury during deliberations;

12. expert witness testimony regarding victim testimony;

13. the illegal sentences;

14. the lack of subject matter jurisdiction due to the defective indictment;

Petitioner asserts claims based on appellate counsel's (Mr. Gerhardt) failure to address:

15. appellate counsel's conflict of interest;

16. the prejudice from the double jeopardy violations;

17. trial counsel's failures enumerated in arguments 1-14;

18. absence of the chief investigator from trial;

19. the constructive amendment of the indictment by designating the lesser included offenses as such;

20. the incompetence or bias of the trial judge.

In "Claim 1" (Ineffective Assistance) of his PCR Petition (Exhibit ZZZ), Petitioner raised his present claims **15** (conflict of interest) (*id.* at 4-5), and **16** (prejudice) (*id.* at 5-6). In addition, in "Claim 1", Petitioner argued that his trial, appellate, and PCR counsel were ineffective for failing to raise the other claims asserted in the PCR Petition. (*Id.* at 3.) Because, as discussed hereinafter, that effectively raised ineffectiveness claims 1 through 14, it also effectively raised ineffectiveness claim **17** (ineffectiveness of appellate counsel re trial counsel's ineffectiveness).

Thus, in PCR "Claim 2" (Confrontation Call) of his PCR Petition, Petitioner effectively raised his present ineffectiveness claims **1** (confrontation call) (*id.* at 7-8), and **2** (recording) (*id.* at 8-9).

In PCR "Claim 3" (Grand Jury), Petitioner raised his present ineffectiveness claim

33

**3** (familial relationship) (*id.* at 12).

In PCR "Claim 4" (Indictment), Petitioner raised his present ineffectiveness claims **4** (double jeopardy) and **14** (subject matter jurisdiction) (*id.* at 14), claim **16** (prejudice) (*id.* at 16, 19, 22-23), claim **10** (Counts 9 and 10) (*id.* at 17), claim **7** (sexual abuse instructions) (*id.* at 17), claim **5** (evidence on sexual abuse) (*id.*), claim **4** (double jeopardy) (*id.* at 18), claim **8** (prosecutorial misconduct) (*id.* at 18, 20-21), claim **19** (constructive amendment (*id.* at 19), and claim **13** (illegal sentences) (*id.*).

In PCR "Claim 6" (Confront Witness), Petitioner raised his present ineffectiveness claim **18** (absence of investigator). (*Id.* at 24.)

In PCR "Claim 7" (Errors), Petitioner raised his present effectiveness claim **12** (expert testimony), claim **9** (jury questions), claim **11** (evidence during deliberations), and claim **20** (judicial incompetence).  (*Id.* at 25.)

In PCR "Claim 8" (Juror Bias), Petitioner raised his present ineffectiveness claim **6** (juror bias).  (*Id.* at 25.)

Having thus presented his current claims of ineffective assistance of trial and appellate counsel to the PCR court, Petitioner's procedural default occurred when the same claims were not again presented to the Arizona Court of Appeals.  Accordingly, no ineffectiveness of PCR counsel caused Petitioner's procedural defaults.

**Summary re Cause and Prejudice** – Based upon the foregoing, the undersigned concludes that Petitioner had failed to establish cause to excuse his procedural defaults.

Both "cause" and "prejudice" must be shown to excuse a procedural default, although a court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir.1991).  Petitioner has filed to establish cause for his procedural default.  Accordingly, this Court need not examine the merits of Petitioner's claims or the purported "prejudice" to find an absence of cause and prejudice.

/ /

/ /

1    4.    **Actual Innocence**

2         The standard for "cause and prejudice" is one of discretion intended to be flexible

3    and yielding to exceptional circumstances, to avoid a "miscarriage of justice." *Hughes v.*

4    *Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986).   Accordingly,

5    failure to establish cause may be excused "in an extraordinary case, where a

6    constitutional violation has probably resulted in the conviction of one who is actually

7    innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis added).   Although

8    not explicitly limited to actual innocence claims, the Supreme Court has not yet

9    recognized a "miscarriage of justice" exception to exhaustion outside of actual

10   innocence. *See* Hertz & Lieberman, *Federal Habeas Corpus Pract. & Proc.* §26.4 at

11   1229, n. 6 (4th ed. 2002 Cumm. Supp.).   The Ninth Circuit has expressly limited it to

12   claims of actual innocence. *Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008).

13        A petitioner asserting his actual innocence of the underlying crime must show "it

14   is more likely than not that no reasonable juror would have convicted him in the light of

15   the new evidence" presented in his habeas petition. *Schlup v. Delo*, 513 U.S. 298, 327

16   (1995).  A showing that a reasonable doubt exists in the light of the new evidence is not

17   sufficient.  Rather, the petitioner must show that no reasonable juror would have found

18   the defendant guilty. *Id*. at 329.   This standard is referred to as the "*Schlup*

19   gateway." *Gandarela v. Johnson*, 286 F.3d 1080, 1086 (9th Cir. 2002).

20        Here, Petitioner does not assert his actual innocence of any of the charges.

21   Petitioner does argue in Ground Four that there was insufficient evidence of the charges

22   of sexual abuse of a minor as alleged in Counts 9 and 10. (Petition, Doc. 1 at 9, *et seq.*)

23   Petitioner's argument is not that he did not engage in the asserted conduct involving the

24   victim's breast, but that to be guilty of the charges in Counts 9 and 10 he must have only

25   engaged in that specific sexual conduct and no other, while the allegations were that the

26   breast contact occurred along with other prohibited conduct.  Petitioner's theory is that

27   those counts were founded on violations of Ariz. Rev. Stat. § 13-1404, which applies "if

28   the sexual contact involves only the female breast."  Ariz. Rev. Stat. § 13-1404(A).  He

1    contends because the evidence showed this occurred at the same time as the other
2    prohibited sexual contact, he could not be guilty of this offense.

3          Petitioner's argument lacks merit.  The sexual abuse statute clarifies that this
4    lesser offense applies to contact with the female breast, and the more stringent sexual
5    conduct statutes, Ariz. Rev. Stat. § 13-1405 (as charged in Counts 1, 3, 5, and 7) and
6    child molestation statute, Ariz. Rev. Stat. § 13-1410 (as charged in Counts 2, 4, 6, an 8,
7    and vacated on appeal) apply to other forms of sexual contact.  Thus, the reference to
8    contact with "only the female breast" appears a limitation on the scope of conduct
9    regulated by § 13-1404, not a limitation on the contemporaneous conduct of the
10   defendant.  Conversely, the child molestation statute, § 13-1410 specifically excludes
11   "sexual contact with the female breast"[7] and the sexual conduct statute, § 13-1405, is
12   explicitly limited to "sexual intercourse or oral sexual contact."

13         In addressing a predecessor version of § 13-1404 (that utilized 14 as the age of
14   consent), the Arizona Supreme Court observed:

15               At first blush, the statute's treatment of victims under fourteen seems
16         anomalous. However, the seeming anomaly is explained by the fact that,
           with respect to victims under fourteen, sexual activities considered more
17         serious than female breast contact are dealt with in other statutes. *See,*
           *e.g.,* Ch. 384, Sec. 4, *supra* (current version at A.R.S. § 13–1410
18         (Supp.1996)) (Molesting a child under the age of fourteen by directly or
           indirectly touching the private parts of such child or causing the child to
19         touch the private parts of the person is a class two felony.); Ch. 384, Sec.
           2, *supra* (current version at A.R.S. § 13–1405 (Supp.1996)) (Sexual
20         intercourse or oral contact with a minor under fourteen years of age is a
           class two felony.).

21   *State v. Getz*, 189 Ariz. 561, 563, 944 P.2d 503, 505 (1997).[8]

22

23   _____
      [7] Previously, § 13-1405 applied to many other forms of sexual contact, while § 13-1410
24   excluded contact with the breast.  Under those formulations, the Arizona Supreme Court
      observed "[w]ith the exception of the female breast, A.R.S. §§ 13-1404 and -1410
25   proscribe essentially the same conduct."  *State v. Romero*, 130 Ariz. 142, 147, 634 P.2d
      954, 959 (1981).  Subsequent amendments seem to have eliminated the overlap.

26   [8] Respondents also argue that § 13-1404 is not a lesser included offense of the other
      offenses because of the specific exclusion of sexual contact with the breast.  (Answer,
27   Doc. 14 at 45, *et seq.*)  However, a legal defense of double jeopardy would not establish
      Petitioner's actual innocence of the charge, but would only constitute a challenge to the
28   legality of the conviction.

Even assuming *arguendo* that Petitioner's legal contention was correct, Petitioner offers nothing to show that contact with the breast only did not occur, but only that the allegations and evidence at trial showed only simultaneous multiple forms of contact. However, a finding of "actual innocence" is not to be based upon a finding that insufficient evidence to support the charge was presented at trial, but rather upon affirmative evidence of innocence.  *See U.S. v. Ratigan*, 351 F.3d 957 (9th Cir. 2003) (lack of proof of FDIC insurance in a bank robbery case, without evidence that insurance did not exist, not sufficient to establish actual innocence).    Petitioner proffers no evidence, credible or otherwise, that at no moment did he engage in contact with the victim's breast while not engaging in other sexual contact.

Accordingly, Petitioner has failed to show his actual innocence and his procedurally defaulted and procedurally barred claims must be dismissed with prejudice.

**B.**   **MERITS OF PREJUDICE CLAIM IN GROUND SIX**

As discussed hereinabove, the undersigned has concluded that Petitioner has properly exhausted his state remedies with respect to his claim that his double jeopardy rights were violated by his prosecution under an indictment that included counts on both the greater offense of sexual conduct with a minor and the lesser included offenses of child molestation, founded upon the same conduct.  (This does not incorporate the now moot claim that his conviction on both was a violation of Double Jeopardy, which was cured when the Arizona Court of Appeals vacated the convictions and sentences on the lesser included offenses.)  Petitioner contends that the Arizona Court of Appeals was wrong when it rejected this claim.

**Standard Applicable on Habeas** - While the purpose of a federal habeas proceeding is to search for violations of federal law, in the context of a prisoner "in custody pursuant to the judgment a State court," 28 U.S.C. § 2254(d) and (e), not every error justifies relief.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly." *Woodford v. Visciotti*, 537 U. S. 19, 24– 25 (2002) (per curiam).  To justify habeas relief, a state court's decision on the merits of a federal claim must be "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" before relief may be granted.  28 U.S.C. §2254(d)(1).[9]

**Applicable Decisions** – In evaluating state court decisions, the federal habeas court looks through summary opinions to the last reasoned decision.  *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).  Here, the last reasoned decision on the merits of this claim was that of the Arizona Court of Appeals in resolving Petitioner's direct appeal.

**State Court Decision** – Here, the Arizona Court of Appeals rejected Petitioner's claim, quoting *Ohio v. Johnson*, 467 U.S. 493, 500 (1984) for the proposition that "the State is not prohibited by the Double Jeopardy Clause from charging respondent with greater and lesser included offenses and prosecuting those offenses in a single trial." (Exhibit HHH, Mem. Dec. at 11-12.)

**Petitioner's Arguments** – Petitioner argues that given the number of duplicative charges and the lack of specificity in the Indictment of the conduct, prejudice must have occurred, making any relied upon authorities distinguishable.  He further argues that Arizona Rule of Criminal Procedure 13.2(c) evidences a legislative preference to avoid enumeration of lesser included offenses, and the prosecution intended to obtain convictions on both.  Petitioner points to the more recent decision in *Payne v. Virginia*,

---

[9] Federal courts are further authorized to grant habeas relief in cases where the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  "Or, to put it conversely, a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable."  *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004).  But here, Petitioner does not assert a factual error, but rather a legal error.

468 U.S. 1062 (1984), and argues that the prosecution effectively attempted a successive prosecution on the lesser included offenses.  Petitioner further argues that authorities finding no Double Jeopardy violation from charging lesser included offenses when double punishments are not imposed are distinguishable because double punishments were imposed on Petitioner.  Petitioner relies on, *inter alia, Ball v. U.S.*, 470 U.S. 856 (1985), *U.S. v. Marquardt*, 786, F.2d 771 (7th Cir. 1986), and *Hellum v. Warden, U.S. Penitentiary*, 28 F.3d 903 (9th Cir. 1994) for the proposition that the charging of the greater and lesser offenses can prejudice the defendant.[10]  (Reply, Doc. 35 at 77-84.)

**Respondents Arguments** – Respondents argue that charging of both greater and lesser included offenses in an indictment had been upheld by the U.S. Supreme Court, the Ninth Circuit, and that Arizona Court of Appeals, citing *Ohio v. Johnson*, *U.S. v. Jose*, 425 F.3d 1237, 1241 (9th Cir. 2005), *Sampson v. U.S.*, 579 F.Supp. 31, 35 (S.D.N.Y. 1984), and *Merlina v. Jejna*, 90 P.3d 202, 203, ¶¶ 4-15 (Ariz. App. 2004).  Respondents further argue that vacating the lesser included offense cured any defect, citing *State v. Engram*, 831 P.2d 362, 365 (Ariz. App. 1991), and *U.S. v. Otis*, 127 F.3d 829, 835 (9th Cir. 1997).  (*See* Answer, Doc. 14 at 23, *et seq.*).

**Discussion** – Petitioner's arguments founded upon state law or decisions of lower federal courts are unavailing.  He is entitled to relief only if the decision of the Arizona Court of Appeals was contrary to or an unreasonable application of federal law as determined by the Supreme Court of the United States.  28 U.S.C. § 2254(d)(1).

The Arizona Court of Appeals relied upon *Ohio v. Johnson*.  In that case, the defendant had been charged with greater and lesser included offenses arising out of a murder/robbery.  The defendant volunteered to plead guilty to the lesser offenses of manslaughter and grand theft, but plead not guilty to the greater offenses of murder and

---

[10] In his PCR Petition, Petitioner relied on *Morris v. Mathews*, 475 U.S. 237 (1986).  That case evaluated prejudice by conviction on a lesser included offense, but only when the double jeopardy violation occurred because the defendant had, in an early prosecution, been convicted on conduct underlying the greater charge.  In contrast, here, Petitioner had not previously been tried on any related charge.

aggravated robbery.  Over the state's objection, the trial court accepted the offer of the guilty pleas, and dismissed the greater offenses on double jeopardy grounds.  The U.S. Supreme Court reversed.  In doing so, the Court observed that the defendant conceded "that on the authority of our decision in *Brown v. Ohio*, [432 U.S. 161 (1977)], the State is not prohibited by the Double Jeopardy Clause from charging respondent with greater and lesser included offenses and prosecuting those offenses in a single trial."  *Ohio v. Johnson*, 467 U.S. at 500.[11]

Petitioner cites to two decisions of the U.S. Supreme Court to support his challenge: *Payne v. Virginia*, 468 U.S. 1062 (1984), and *Ball v. U.S.*, 470 U.S. 856 (1985).

*Payne* is inapposite.  That *per curiam* opinion did not address a single prosecution, with greater and lesser included offenses charged, but successive prosecutions. "This petition for certiorari seeks review of a judgment of the Supreme Court of Virginia rejecting petitioner's double jeopardy challenge to a conviction for robbery *which followed a prior conviction* for capital murder committed during the perpetration of the robbery while armed with a deadly weapon."  468 U.S. 1062 (emphasis added).

To be sure Petitioner attempts to paint his simultaneous prosecution as successive, *i.e.* by arguing that the prosecution continued to press for maintaining the duplicative convictions after trial.  But the Supreme Court has never held (outside the context of an acquittal) that the different stages in the progress of a single prosecution are relevant for double jeopardy purposes.  To the contrary, the Court has routinely declined to parcel out the stages of a single prosecution.  For example, in *U.S. v. DiFrancesco*, 449 U.S. 117, 136 (1980) the Court held "The double jeopardy considerations that bar re-prosecution

---

[11] Although "'clearly established Federal law' in § 2254(d)(1) 'refers to the holdings, as opposed to the dicta" of the Supreme Court's decisions, *Carey v. Musladin*, 549 U.S. 70, 74 (2006), because the Arizona Court's decision was in accordance with the language in *Ohio v. Johnson*, this Court need not resolve whether that Court's statement on the propriety of charging the greater and lesser offenses was a holding or merely dicta.

after an acquittal do not prohibit review of a sentence."  In *U.S. v. Wilson*, 420 U.S. 332, 352-53 (1975), the Court held that "[w]hen a judge rules in favor of the defendant after a verdict of guilty has been entered by the trier of fact, the Government may appeal from that ruling without running afoul of the Double Jeopardy Clause."  Petitioner's argument and its ilk were effectively disposed of in *Ohio v. Johnson*, when the Court observed:

> Respondent's argument is apparently based on the assumption that trial proceedings, like amoebae, are capable of being infinitely subdivided, so that a determination of guilt and punishment on one count of a multicount indictment immediately raises a double jeopardy bar to continued prosecution on any remaining counts that are greater or lesser included offenses of the charge just concluded. We have never held that, and decline to hold it now.

467 U.S. at 501.

Petitioner cites *Ball* for the proposition that the Double Jeopardy Clause seeks to protect from not only multiplicitous sentences, but also from other adverse collateral consequences (in this case, inferences of guilt).  The *Ball* Court did not, however, make any holding with respect to multiplicitous indictments.    Rather, *Ball* dealt with a challenge to simultaneous convictions on "receiving" a firearm and "possessing" a firearm, which the government sought to preserve by simply making the sentences concurrent.  The Court rejected that approach, mandating that one of the convictions be vacated.  In doing so the Court observed:

> We emphasize that while the Government may seek a multiple-count indictment against a felon for violations of §§ 922(h) and 1202(a) involving the same weapon where a single act establishes the receipt and possession, the accused may not suffer two convictions or sentences on that indictment. If, upon the trial, the district judge is satisfied that there is sufficient proof to go to the jury on both counts, he should instruct the jury as to the elements of each offense. Should the jury return guilty verdicts for each count, however, the district judge should enter judgment on only one of the statutory offenses.

470 U.S. at 865.  Thus, *Ball* at least suggests that the mere inclusion of the multiplicitous charges in the same indictment was not prohibited.

To be sure, Petitioner's theory is not novel.  For example, in *U.S. v. Sue*, 586 F.2d 70 (8th Cir. 1978), the Eighth Circuit considered whether the defendant had been

prejudiced by a multiplicitous (or "multiplicious") indictment because "the appearance that he committed two violations instead of one bolstered the government's proof of his motive." *U. S. v. Sue*, 586 F.2d 70, 71 (8th Cir. 1978).  The court declined to find such prejudice based upon the substantial evidence of motive.

Even the U.S. Supreme Court has, in the context of addressing the failure to properly instruct the jury to choose between mutually exclusive offenses (*i.e.* larceny vs. receiving already stolen property) considered the impact of the multiple charges on the jury's decision making.  *See Milanovich v. U.S.*, 365 U.S. 551 (1961).  However, that was not in the context of a double jeopardy analysis, but one of instructional error.

Nonetheless, to obtain relief in this habeas proceeding, Petitioner must show a holding of the U.S. Supreme Court finding a violation based solely on the inclusion of greater and lesser included offenses in the same indictment.  That Petitioner cannot do.

Accordingly, this claim is without merit and must be denied.


**C.**     **SUMMARY REGARDING PETITION**

Petitioner has failed to fairly present and has procedurally defaulted his state remedies on all of his claims except the prejudice from multiplicitous indictment claim in Ground Six.  He has failed to show cause and prejudice or actual innocence to excuse those procedural defaults, and accordingly, those claims must be dismissed with prejudice.

The remaining claim in Ground Six is without merit, and must be denied.


**D.**     **MOTION FOR EVIDENTIARY HEARING**

On July 23, 2015, Petitioner filed his Motion for Evidentiary Hearing (Doc. 27).  In this 25 page motion, Petitioner seeks an evidentiary hearing on each of his claims.  Respondents have filed a 1 page Objection (Doc. 30), arguing that Petitioner's procedural defaults and the ability of the Court to resolve the claims on the basis of the existing record, no evidentiary hearing is necessary. Petitioner has replied (Doc. 33),

challenging the procedural default, and asserting his diligence.

As discussed hereinabove, the undersigned has concluded that Petitioner has procedurally defaulted on most of his claims.  Because this Court cannot reach the merits of these claims, no evidentiary hearing on them is necessary or appropriate.  .)  "We begin with the rule that no such hearing is required '[i]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief.'" *Hibbler v. Benedetti*, 693 F.3d 1140, 1148 (9th Cir. 2012).

With regard to the exhausted prejudice claim in Ground Six, Petitioner fails to proffer any evidence to adduced at an evidentiary hearing which would overcome the legal hurdles to consideration of this claim. (Motion, Doc. 27 at 20-22

A bald request for an evidentiary hearing need not be granted.  "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).  Where a petitioner does not proffer any evidence to be adduced at an evidentiary hearing which would prove the allegations of the petition, the habeas court need not grant a hearing.  *Chandler v. McDonough*, 471 F.3d 1360, 1363 (11th Cir. 2006)  ("The failure to proffer any additional evidence defeats [petitioner's] argument that he was entitled to an additional evidentiary hearing in federal court."); *Williams v. Bagley,* 380 F.3d 932, 977 (6th Cir.2004) ("district court did not abuse its discretion in denying Williams's request, given his failure to specify ... what could be discovered through an evidentiary hearing"); *Lincecum v. Collins,* 958 F.2d 1271, 1279–80 (5th Cir.1992) (denying evidentiary hearing "[a]bsent any concrete indication of the substance of the mitigating evidence" the hearing supposedly would provide).  Petitioner proffers no evidence to be adduced at a hearing that would support his only claim to be addressed on the merits.

Accordingly, this motion will be denied.

#### IV.    CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment.  The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner.  Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be in part on procedural grounds, and in part on the merits. Under the reasoning set forth herein, jurists of reason would not find it debatable whether the district court was correct in its procedural ruling, and jurists of reason would not find the district court's assessment of the constitutional claims

44

debatable or wrong.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

## V.    ORDER

**IT IS THEREFORE ORDERED** that Petitioner's Motion for Evidentiary Hearing, filed July 23, 2015 (Doc. 27) is **DENIED**.

## VI.    RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the portion of Ground Six of the Petitioner's Petition for Writ of Habeas Corpus, filed March 30, 2015 (Doc. 1) asserting a claim of prejudice from a multiplicitous indictment be **DENIED**.

**IT IS FURTHER RECOMMENDED** that the remainder of Petitioner's Petition for Writ of Habeas Corpus, filed March 30, 2015 (Doc. 1) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

## VII.    EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.   Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any

45

findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: January 21, 2016

15-8043r RR 15 11 10 on HC.docx

James F. Metcalf
United States Magistrate Judge

46